

**SO ORDERED.**

**SIGNED this 22 day of October, 2007.**

_____
**A. Thomas Small**
**United States Bankruptcy Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### FAYETTEVILLE DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **CEDAR CREEK FIBERS, LLC** | **03-00838-8-ATS** |
|     **DEBTOR** | |
| | |
| **GERALD A. JEUTTER, JR., TRUSTEE** | |
|     **Plaintiff** | **ADVERSARY PROCEEDING NO.** |
|     **v.** | **S-05-00027-8-AP** |
| **WELLMAN, INC.** | |
|     **Defendant.** | |

**ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**

The matters before the court are the motions for summary judgment filed by both parties to this adversary proceeding. A hearing took place in Raleigh, North Carolina on September 11, 2007.

Cedar Creek Fibers, LLC filed a petition for relief under chapter 7 of the Bankruptcy Code on January 29, 2003, and Shawna Y. Staton was appointed trustee. Gerald A. Jeutter, Jr. was substituted as trustee on April 3, 2007. On January 26, 2005, Ms. Staton filed this adversary proceeding against Wellman, Inc. pursuant to 11 U.S.C. §§ 547, 548 and 550 to avoid and recover

preferential and fraudulent transfers in the amount of $3,736,404.84.  On November 15, 2006, the complaint was amended by leave of court to allege additional preferential payments in the amount of $335,000.  Following discovery in this matter, Mr. Jeutter no longer contends that Wellman is an insider, and thus the transfers he seeks to recover are limited to those made during the 90 days prior to the filing of the petition.  In addition, Mr. Jeutter agrees that many of the transfers are subject to the "subsequent new value" defense set forth in § 547(c)(4).  Accordingly, the trustee now seeks to avoid and recover preferential transfers only in the amount of $154,376.99.

Wellman contends that all of the payments are protected by either the subsequent new value defense or the "contemporaneous new value" defense set forth in § 547(c)(1), and that the combination of the defenses provides for complete protection of the payments.  Wellman also contends that the five payments added by the amended complaint are barred by the statute of limitations.  The trustee contends that the contemporaneous new value defense fails as a matter of law, and disagrees that the subsequent new value defense applies to a payment made by Wellman to the Cumberland County Tax Collector and to services allegedly provided under a Transition Services Agreement between the debtor and Wellman.  Both parties have moved for summary judgment.

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.  This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(F), which this court may hear and determine.

Cedar Creek Fibers was a manufacturer of textile fibers. In May 2002, Cedar Creek purchased property and operations from Wellman, and entered into a Chip Supply Agreement pursuant to which Cedar Creek purchased from Wellman polyester chips that were the primary raw material used by Cedar Creek in its operations. The Chip Supply Agreement contained a credit arrangement that required payments to be made on the first to occur of (a) 60 days from delivery, or (b) when the open account balance reached a financing cap of $2,000,000. After August 28, 2002, the time limit was reduced to 30 days from delivery.

Prior to December 3, 2002, Cedar Creek designated each payment to correspond to a particular invoice or set of invoices. The trustee concedes that each transfer prior to December 3, 2002, is consumed by the subsequent new value rule. Beginning December 10, 2002, Cedar Creek sent a series of checks for even amounts (e.g., $100,000, $85,000, $50,000) characterized as "unallocated." The trustee contends that the purpose of these payments was to keep the credit account balance below $2,000,000 in an effort to maintain the flow of shipments of raw materials to the debtor. Wellman contends that the parties agreed that the debtor would make payments to Wellman approximately equal to the shipments received from Wellman, but the payments did not identify the invoice being paid, the payments did not equal exactly the sum of any invoices, and the payments were in large, lump-sum amounts. Wellman explained that because the payments were made before the invoices were issued, they could neither identify the invoice number nor correspond to the exact amount of the invoices.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp.

v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In making this determination, conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962) (per curiam). Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for filtering out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327, 106 S. Ct. at 2555. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323, 106 S. Ct. at 2552. Summary judgment should not be granted "unless the moving party has established his right to a judgment with such clarity as to leave no room for controversy." Portis v. Folk Constr. Co., 694 F.2d 520, 522 (8th Cir. 1982) (internal quotations omitted).

Section 547(b) provides

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property –
  (1) to or for the benefit of a creditor;
  (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
  (3) made while the debtor was insolvent;
  (4) made –
    (A) on or within 90 days before the date of the filing of the petition; or
    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
  (5) that enables such creditor to receive more than such creditor would receive if –
    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The parties agree that the trustee has established the elements of § 547(b),[1] but Wellman has asserted affirmative defenses as provided in §§ 547(c)(1) and (c)(4). Those sections provide

> (c) The trustee may not avoid under this section a transfer –
> (1) to the extent such transfer was –
> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
> (B) in fact a substantially contemporaneous exchange;
>
> * * *
> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor –
> (A) not secured by an otherwise unavoidable security interest; and
> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor[.]

11 U.S.C. §§ 547(c)(1); (c)(4). The trustee concedes that Wellman has established the "subsequent new value" defense under § 547(c)(4) with respect to the transfers made prior to and including December 3, 2002. The parties disagree, however, as to whether Wellman can establish the "contemporaneous new value" defense pursuant to § 547(c)(1) with respect to the "even number" transfers.

The debtor made the following "unallocated" payments, portions of which the trustee now seeks to avoid and recover:

---

[1] The defendant disputed some of the elements of § 547(b) with respect to some of the payments at issue in the complaint. Those payments, however, were made between ninety days and one year prior to filing, and the avoidance of those payments was dependent upon the insider status of the defendant. Because the trustee has withdrawn his allegation that the defendant was an insider and his efforts to avoid those payments, the challenges to § 547(b) are no longer an issue.

5

| Date Payment Received | Check number | Amount |
|---|---|---|
| 12/10/02 | C0279 | $100,000 |
| 12/13/02 | C0280 | $85,000 |
| 12/16/02 | C0283 | $100,000 |
| 12/26/02 | C0285 | $50,000 |
| 1/3/03 | C0284 | $60,000 |
| 1/8/03 | C1056 | $75,000 |
| 1/10/03 | C1067 | $40,000 |
| 1/13/03 | C1068 | $80,000 |
| 1/15/03 | C1069 | $80,000 |

These payments totaled $670,000.[2] The last five payments, totaling $335,000, are those added to the trustee's claims by the amended complaint. Wellman made a series of shipments after these payments were received, many of which the trustee concedes constitute subsequent new value. For those that cannot be applied as subsequent new value, Wellman offers a strained analysis to support its contention that those shipments constituted contemporaneous exchange for new value.

As an example of Wellman's efforts, check number C0280, in the amount of $85,000, was received by Wellman on December 13, 2002. Wellman made a shipment on December 13, 2002, with an invoice amount of $19,206.72, that the trustee agrees constitute subsequent new value. However, Wellman also made the following shipments that cannot be applied as subsequent new value:

---

[2] The trustee concedes that the debtor received subsequent new value in the amount of $515,623.01 related to these transfers, and seeks to recover only $154,376.99.

| Invoice Date | Invoice Number | Amount |
|---|---|---|
| 12/11/02 | HL716 | $19,094.40 |
| 12/12/02 | HL717 | $19,101.89 |
| 12/12/02 | HL718 | $19,206.72 |

Because it has no subsequent new value defense, Wellman contends that these shipments were new value provided contemporaneously with the check written on December 5, 2002, but received by Wellman on December 13, 2002.

The debtor wrote a check to Wellman on December 13, 2002, Check No. C0285, that was received by Wellman on December 26, 2002, in the amount of $50,000. Wellman contends that Invoices HM070, HM071, HM072, and a portion of Invoice HM073 constitute subsequent new value for the December 26, 2002, payment. The debtor then made a payment received by Wellman on January 3, 2003, in the amount of $60,000, which is entirely subsumed by subsequent new value shipments. Because Invoice HM073 was dated December 31, 2002, the balance of that invoice could not be used as subsequent new value for the January 3, 2003, payment, so Wellman attributes the balance of Invoice HM073 as contemporaneous new value for the $75,000 payment made on January 8, 2003. Similarly, Wellman contends that shipments made on January 3, 2002, were contemporaneous with payments made on January 8, that shipments made on January 9 were contemporaneous with payments made on January 13, and that shipments made on January 10 were contemporaneous with payments made on January 15, but only to the extent those shipments could not be credited back to a prior payment to constitute subsequent new value.

Wellman maintains that it seeks to apply the contemporaneous new value defense "only where needed;" that is, only where it cannot apply the subsequent new value defense. It adds

7

together invoices to try to match the amounts of the payments, and applies parts of invoices to one payment and parts to another to make the numbers mesh (e.g., Invoice HM073).  The mathematic gymnastics required to make the defense work demonstrate that there was no intention for the payments and the shipments to relate to each other; instead, the payments were intended to bring down the overall balance due on the account, and the shipments were simply a continuing extension of credit that was permissible due to the debtor's maintaining the level of the account balance below $2 million.

Indeed, the characterization of the checks as "unallocated" is telling: in the past, the checks identified the specific invoices the payments were to satisfy.  If Wellman's argument were accurate – that the debtor knew that each truckload of product averaged around $19,000, but because the payment was made before the shipment, the invoices and exact amount could not have been identified – then the debtor could have labeled the checks as, for example, "four shipments."  It did not do so, suggesting that the payments were linked simply to the account, and not to the product.  Indeed, the last four checks, beginning on January 8, 2003, totaled $275,000, while only $142,000 in shipments were made thereafter.  In fact, no shipments followed the final payment on January 15, 2007.  Had the parties agreed that each payment would be a contemporaneous exchange with new shipments, the payments would not have exceeded the shipments by $123,000, making Wellman's explanation even less plausible.

In summary, there is no evidence that there was an intention for the payments to be a contemporaneous exchange for new value, or that the payments were in fact contemporaneous with the exchange of new value.  Instead the evidence showed a pattern of tying specific payments to specific invoices up until December 2, 2002, and then a complete change in practice to lump sum

payments reflecting an effort to pay down the significant balance on the account. Accordingly, the contemporaneous exchange of new value defense fails as a matter of law.

There are also two types of value Wellman contends it gave to the debtor that, if allowed, would constitute subsequent new value and would not be avoidable. First, Wellman contends that a payment it made in the amount of $190,000 to the Cumberland County Tax Collector on January 6, 2003, for 2002 property taxes should be treated as subsequent new value. The trustee disagrees, maintaining that under state law, Wellman was the primary obligor for the taxes, and at most it has an unsecured claim against the debtor for one-half of the payment resulting from an agreement to prorate the taxes when the property was purchased by the debtor from Wellman.

While the trustee is correct that Wellman was solely liable for the payment, the debtor did receive value for the tax payment. The tax debt was secured by a lien on the debtor's property that was canceled due to Wellman's payments, and the debtor was able to sell the property and retain the proceeds that otherwise would have been required to satisfy the lien.[3] Accordingly, one half of the tax payment constitutes subsequent new value in the amount of $95,000. The payment was made on January 6, 2003. After that, four additional transfers were made by the debtor in the amount of $275,000, with agreed subsequent new value provided in the amount of $150,674.18, leaving a balance of $124,325.82 in transfers.

Second, there are three invoices issued by Wellman that were not part of the Chip Supply Agreement, but instead were pursuant to a Transactional Services Agreement ("TSA") between the debtor and Wellman. Those invoices were issued as follows:

---

[3] For further discussion of the tax liability on the property, the agreement between the parties, and Wellman's payment of the debt, see In re Cedar Creek Fibers, LLC, Case No. 03-00838-8-ATS (Bankr. E.D.N.C. Oct. 5, 2007).

| Date    | Invoice Number | Invoice Amount |
|---------|----------------|----------------|
| 12/4/02 | 1120021        | $6,633         |
| 1/2/03  | 1220021        | $6,100         |
| 1/3/03  | 1220021[4]     | $6,000         |

The trustee contends that these cannot be credited as subsequent new value for several reasons: first, the payments made by the debtor to Wellman were related to the Chip Supply Agreement line of credit, not the TSA. Second, there is no evidence that Wellman actually provided the services to support these invoices. Finally, the services were invoiced during the first week of the month following the provision of services, and thus it would be impossible to issue invoices on both January 2 and 3, unless the January 3, 2003, invoice was for services not yet provided.

Wellman's response to the trustee's arguments about the TSA payments was primarily to contend that if the court accepted the contemporaneous new value defense and allowed Wellman's payment to Cumberland County as a subsequent exchange of new value, then the services under the TSA would not be needed to establish a defense to the payments. It did not proffer how the invoices should be applied should the court reject either of the other defenses. Nonetheless, the Affidavit of Dominic D. Russo, the corporate credit manager for Wellman, indicates that by late November 2002, Cedar Creek informed Wellman that it no longer desired Wellman's services under the TSA, and Cedar Creek began performing those services on its own. Accordingly, it appears that the two January invoices may have been for services that were not provided. Russo Aff. at 5, ¶ 17.

---

[4] Apparently there were three invoices issued with the invoice number 122021: two for the TSA dated January 2 and 3, 2003, and one for a tax payment to Cumberland County made on January 6, 2003, but apparently invoiced on January 4, 2003.

Because the court found one half of the tax payment to constitute subsequent new value, the balance of transfers to Wellman is reduced so that the TSA payments cannot also represent subsequent new value. Thus, the court does not need to determine whether the services were actually provided or whether services performed under the TSA could substantiate a new value defense for transfers made pursuant to the chip supply agreement.

Finally, Wellman asks the court to revisit its November 9, 2006, order allowing the trustee to amend its complaint to add five payments equaling $335,000 after the statute of limitations expired. In that order the court provided

> The original complaint seeks recovery of a large number of payments made in the course of a contract between the debtor and Wellman for the purchase of goods. A summary of the transactions presented by Wellman showed that while the four checks in question may have differed slightly in nature (they appear to be prepayments, rather than payments pursuant to invoices received), it looks as though they are part of the same series of transactions as those in the original complaint. If that is the case, then the amendment would relate back. . . . Of course, if Wellman can establish at trial that they are not substantially the same, the court can reconsider whether the amendment should relate back.

Order of November 9, 2006 at 3. Though the order says that the court would reconsider the issue at trial, Wellman contends that it raised the issue at summary judgment because there are no disputed issues of fact.

Rather than provide any evidence that the checks at issue were different than the other transfers alleged in the complaint, Wellman reiterated the argument that it made in opposition to the motion to amend the complaint. There is no new information that these payments were anything other than payments in even amounts made to reduce the overall credit balance owed to Wellman. Accordingly, the court's prior determination stands and the amended complaint relates back to the original date of filing.

Based on the foregoing, the trustee's motion for summary judgment will be **ALLOWED** on the defense of contemporaneous exchange for new value. Wellman's motion for summary judgment will be **ALLOWED** on the defense of subsequent new value with respect to one-half of the tax payment made to Cumberland County.

A separate judgment will be entered in favor of the trustee in the amount of $124,325.82.

**SO ORDERED.**

**END OF DOCUMENT**